SORAYA SADEGHI, ESQUIRE, BBO #666792
SORAYA LAW, P.C.
177 HUNTINGTON AVENUE, 17TH FLOOR
BOSTON, MASSACHUSETTS 02155
TELEPHONE: 857-453-6513
FACSIMILE:  617-904-1801
soraya@sorayalaw.com
Attorney for the Plaintiffs

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| NILOOFAR GHASEMI; and <br> ALI EMAMI, <br><br> Petitioners/Plaintiffs, <br><br> v. <br><br> MARCO RUBIO, in his official capacity as Secretary of State; U.S. Department of State. <br><br><br> Respondents/Defendants. | Case No. <br><br> Dated Filed:  2.10.2025 <br><br><br> Trial Date: None Set <br><br> IMMIGRATION MANDAMUS CASE |

**PETITION FOR MANDAMUS AND COMPLAINT**
**FOR INJUNCTIVE AND DECLARATORY RELIEF**

1

## INTRODUCTION

1.  On December 7, 2023, Petitioner, Ali Emami, was interviewed at the Embassy of the United States of America located in Yerevan, Armenia in connection with a I-130 (Petition for Alien Relative) filed by US American Citizen Niloofar Ghasemi.

2.  Ms. Ghasemi resides in Weymouth, Massachusetts and is gainfully employed since 2018 at the Commonwealth of Massachusetts as a Service Desk Analyst. Ms. Ghasemi was born in Iran and immigrated to the United States in 2007 and naturalized as a US Citizen with her family.

3.  Since leaving Iran at the age of 18, Ms. Ghasemi visited her family in Iran about once a year. In 2019 during one of her visits back to Iran, she reconnected with Mr. Emami. Their relationship grew over time, and they began communicating with each other in 2019 through internet applications such as WhatsApp, Facebook and video call,[1] despite the 9 hour time difference.

4.  After consistent communication, Mr. Emami asked for Ms. Ghasemi's hand before her upcoming trip to Iran. Soon after, in 2019, Ms. Ghasemi and Mr. Emami got engaged. The Islamic Republic of Iran's laws prohibit unmarried women visiting men if they are not married and mandate them to have a temporary marriage referred to as "sigeh."

5.  Ms. Ghasemi and Mr. Emami formally signed their marriage papers on May 24, 2021, and a month later on June 29, 2021, Ms. Ghasemi submitted payment for the I-130 application. After signing their marriage papers, Ms. Ghasemi and Mr. Emami began living together at a home provided by Ms. Ghasemi's mother.

6.     On May 26, 2022, Ms. Ghasemi and Mr. Emami had their marriage celebration, with about 150 people in attendance. They visited Isfahan and Shiraz for their honeymoon and stayed with Ms. Ghasemi's mother for about 2 months after returning to Iran.

7.     In July of 2022, Ms. Ghasemi returned to the United States. About 6 months later, Ms. Ghasemi went back to Iran in January to be with her husband for 3 weeks. Thereafter, in July 2022, Ms. Ghasemi and Mr. Emami started the I-130 visa petition with USCIS and the National Visa Service.

8.     On November 15, 2022, Ms. Ghasemi received notice of an I-130 approval for Mr. Emami.

9.     On December 3, 2022, Mr. Emami submitted the Immigrant Visa and Alien Registration application (DS-260).

10.    Mr. Emami was invited to interview on November 6, 2023, after receiving the I-130 approval and notice to appear, but the Embassy changed his interview date to December 7, 2023. Mr. Emami attended the interview on December 7, 2023, and was told that he would receive a questionnaire and could expect to hear back regarding the decision within a month. Since then, there has been no update or communication.

11.    This writ was prepared prior to the issuance of Executive Order Protecting the United States from Foreign Terrorists and other National Security and Public Safety Threats on January 20, 2025. However, after review of the Executive Order, nothing in this order applies to the present case. The intent of this order is to protect citizens from terrorists, or those who exploit immigration laws for malevolent purposes. In this matter, the husband and wife simply wish to live together. Mr. Emami owns and operates a

coffee shop, and he is not a terrorist with any malevolent purposes. Mr. Emami just wants to be with his wife and start their family together.

12.     Additionally, the Presidential Proclamation 9645 of September 24, 2017 (the "Proclamation"), commonly referred to as the "Muslim Ban", is still essentially in effect because the administration was never able to make diplomatic relationships with Iran and restore the Nuclear Deal.

13.     Statutes, regulations, the Proclamation, and agency guidance interpreting the Proclamation make clear that the Defendant and Respondents ("Defendants") have a mandatory duty to issue a reasonably prompt decision on visa applications and applications for waiver under the Proclamation. Defendants have repeatedly represented that the Proclamation contains a meaningful waiver process.

14.     Over three (3) years ago, Petitioners fulfilled all requirements to obtain an I-130 visa. At the time of filing of the application on June 29, 2021 (date received by National Visa Center) the Proclamation was not filed. The executive order cannot grandfather in previous cases that were filed.

15.      Unfortunately, the I-130 petition process has taken over 3 years causing excessive expenses, major let down for the Petitioners and their family members, anxiety, stress, emotional strain and financial burden.

16.     The Petitioners have frequently inquired as to the status of the petition. The Defendants have unreasonably delayed in making a final decision on the Petitioner's visas and prohibiting Mr. Emami's ability to immigrate to the United States, leaving his marriage and life with Ms. Ghasemi in limbo.

17. With the recent reprehensible persecution, killing and torture of women and female children in Iran beginning with the death of Mahsa Amini in 2022, the future of Ms. Ghasemi's marriage to Mr. Emami and creation of their family in the United States has become even more valuable. Petitioners and their families face imminent, irreparable harm if the I-130 is not granted. Ms. Ghasemi is a US citizen, and it is not safe for her to return to Iran, as oppression has increased after the protests of the death of Mahsa Amini. Ms. Ghasemi is 36 years old and has reached the age of what medical professionals call a matured maternal age and her chances of procreating are dwindling every month. Mr. Emami and Ms. Ghasemi have a desire to form a family which is in limbo given the indefinite pause held on the I-130.

18. In general, all Iranian males are required to perform military service. The petitioner in this matter had a very limited role in the "Artesh" military service. Unlike the Sepah or Basij, Artesh is mandatory for all Iranian males, with the threat of being sent to prison if they do not participate. Mr. Emami has no criminal history in Iran or anywhere in the world. He is gainfully self-employed at Bamboo Coffee Shop in Tehran, Iran.

19. Defendants' delay in issuing final decisions in this case, given the specific circumstances without justification, threatens to render the Proclamation's waiver process as a sham. Petitioners seek narrow potentially life-changing relief: an order directing Defendants to fulfill their mandatory duties to render a prompt adjudication of Plaintiffs' visa and waiver applications.

## JURISDICTION AND VENUE

20. This Court has jurisdiction under 28 U.S.C. §§1331 and 1361. Jurisdiction is further conferred by 5 U.S.C. §702.

21. The Court has further remedial authority under the Declaratory Judgment Act, 28 U.S.C. §2201 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. §500 *et seq.*

22. Venue properly lies within the Eastern District of Massachusetts pursuant to 28 U.S.C. §1391 (e) (1) (c) because Petitioner Niloofar Ghasemi resides in this district and the Defendants are officers and employees of the United States sued in their official capacities.

## PARTIES

23. Petitioner Niloofar Ghasemi is a United States Naturalized Citizen who came with her family to the United States in 2007 to further her education and better their lives. Ms. Ghasemi resides in Weymouth, Massachusetts and is the wife of Petitioner Ali Emami.

24. Petitioner Ali Emami is the applicant for the I-130 visa petition and husband of the Petitioner Niloofar Ghasemi. He currently resides in Tehran, Iran. He is currently married to Ms. Ghasemi, is 35 years old and is the owner of a coffee shop in Tehran. He graduated from Tarbiat School in 2021.

25. Defendant and Respondent Marco Rubio is the United States Secretary of State. Defendant Rubio is responsible for implementing and administering the Proclamation, including the waiver process created by Section 3(c) of the Proclamation. Further,

Defendant Rubio is responsible for administering the I-130 petition for relative. He is sued in his official capacity.

26.     Defendant and Respondent U.S. Department of State is a federal cabinet agency responsible for implementing and administering the Proclamation, including the waiver process created by Section 3(c) of the Proclamation, and the U.S. diversity immigration visa program, including but not limited to holding visa interviews; conducting administrative processing of applications for diversity immigrant visas; making final decisions on the issuance of diversity immigrant visas; issuing diversity immigrant visas; and receiving, adjudicating and making final decisions regarding applications for waivers under Section 3(c) of the Proclamation.  The Department of State is a Department of the Executive Branch of the United States Government, and is an agency within the meaning of 5 U.S.C. §552 (f).

## BACKGROUND AND STATEMENT OF FACTS

28.     Defendants have a mandatory duty to issue reasonably prompt decisions on visa applications and requests for waivers under the Proclamation.

**Statutory and Regulatory Framework for Visa Adjudications**

29.     The Immigration and Nationality Act authorizes consular officers to issue immigrant visas and nonimmigrant visas to foreign nationals who are eligible for those visas and admissible to the United States.  *See* 8 U.S.C. §1201; 22 C.F.R. §42.71.

30.     One type of immigrant visa is an I-130 petition for relative. This visa is intended for a citizen of the United States to bring their relative to the U.S. Such is the case for Ms. Ghasemi and Mr. Emami.

31. While the consular officials have discretion to deny or grant a visa, State Department regulations create an unequivocal mandatory duty to issue a decision on the visa application. 22 C.F.R. 42.81 (a) states "When a visa application has been properly completed and executed…. The consular officer *must* either issue or refuse a visa under INA 212(a) or INA 221 (g) or other applicable law." (Emphasis added.) If a visa is refused, and the applicant provides evidence tending to overcome the ground of ineligibility on which the refusal was made, "the case shall be reconsidered." 22 C.F.R. §42.81 (e).

32. Further, any decision by a consular officer on a visa application must be issued "within a reasonable time." 5 U.S.C. §555(b).

33. If the Petitioners do not receive their visas by June 2025, the approval of the I-130 petition is no longer valid.

34. The Proclamation has imposed restrictions on the issuance of visas and entry of Iranian nationals to the United States, with limited exceptions not at issue here. Alongside the suspension of visa issuance to Iranian nationals, the Proclamation created a waiver that could be granted by consular officers to allow Iranian nationals to receive visas and travel to the United States if they fulfilled certain criteria. The Proclamation and agency guidance interpreting the Proclamation make clear that Defendants have a mandatory duty to act on applications for waivers.

35. Proclamation 9645, entitled "Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry into the United States by Terrorists or Other Public-Safety Threats," was issued on September 24, 2017. *See* 82 Fed. Reg. 45161 (Sept. 27, 2017). On April 10, 2018, the President issued a proclamation lifting the entry restrictions on

nationals of Chad, but leaving place all other entry restrictions and provisions of the Proclamation of September 24, 2017. *See* 83 Fed. Reg. 15937 (Apr. 13, 2018).

36.     Section 2(b) of the Proclamation indefinitely suspends the entry of nationals of Iran into the United States as immigrants and nonimmigrants, except under valid student and exchange visitor visas and subject to case-by-case waivers described in section 3 of the Proclamation.

37.     Section 3(c) of the Proclamation establishes the waiver process by which nationals of Iran can obtain a visa to enter the United States. Under this subsection, a consular officer is authorized to grant a discretionary waiver, on a case-by-case basis, to an individual whose entry is restricted under the Proclamation if that individual demonstrates that the waiver "would be appropriate and consistent" with certain criteria listed in the Proclamation. Specifically, the individual must demonstrate to the consular officer's satisfaction that: "(A) denying entry would cause the foreign national undue hardship; (B) entry would not pose a threat to the national security or public safety of the United States; and (C) entry would be in the national interest." Proclamation §3(c)(i).

38.     The Proclamation specifies that a case-by-case waiver may be appropriate in "individual circumstances" such as where a "foreign national seeks to enter the United States to visit or reside with a close family member (e.g. a spouse, child, or parent) who is a United States citizen, lawful permanent resident, or alien lawfully admitted on a valid nonimmigrant visa, and the denial of entry would cause the foreign national undue hardship." Proclamation §3 (c) (iv).

39.     The Proclamation was challenged in court. On December 4, 2017, the Supreme Court granted Defendants' application for stay of the preliminary injunction entered by

the District Court for the District of Hawai'i. *See Trump v. Hawai'i*, No. 17A550, --- S. Ct. ----, 2017 WL 5987406 (Mem) (Dec. 4, 2017). The Proclamation's suspension on the issuance of visas to Iranian nationals, and the waiver process established in Section 3 (c) of the Proclamation, because effective immediately.

40. Current State Department guidance setting forth its implementation of the Proclamation confirms that consular officers must issue waivers to nationals of the countries listed in the Proclamation when they determine that the visa applicant meets the three criteria specified in Section 3(c): "issuance [of the visa] is in the national interest, the applicant poses no national security or public safety threat to the United States, and denial of the visa would cause undue hardship."[2]

41. In a February 22, 2018 letter (the "February 22nd Letter"), the State Department describes the process by which a consular officer assesses and determines whether to grant a waiver to an applicant for an immigrant visa that is subject to the Proclamation.[3]

42. *First*, visa applicants subject to the Proclamation undergo the same visa application process as visa applicants that are not subject to the Proclamation, including the submission of a visa application form, background and security screening, and a consular interview, which "results in a decision by a consular officer." *Id.* At 1-2 (citing 8 U.S.C. §§1201 (a)(1), 1202(b), 1202(h), 1204; 22 C.F.R. §§41.102, 42.62).

43. *Second*, if the applicant is eligible for a visa, the consular officer must determine whether the applicant falls within an exception to the Proclamation. *Id.*

44. *Third,* if an applicant does not fall into an exception, the consular officer must consider the applicant for a waiver under the Proclamation. The Department of State

states unequivocally: "Each applicant who meets the conditions set forth in section 3(c) of the Proclamation *must be considered for a waiver.*" *Id.* (Emphasis added).

45. The February 22nd letter outlines how the waiver criteria are evaluated:

   a. First, to satisfy the undue hardship criterion, the applicant must demonstrate to the consular officer's satisfaction that an unusual situation exists that compels immediate travel by the applicant and that delaying visa issuance and the associated travel plans would defeat the purpose of travel.

   b. Second, the applicant's travel may be considered in the national interest if the applicant demonstrates to the consular officer's satisfaction that a U.S. person or entity would suffer hardship if the applicant could not travel until after visa restrictions imposed with respect to nationals of that country are lifted.

   c. Finally, to establish that the applicant does not constitute a threat to national security or public safety, the consular officer considers the information-sharing and identity-management protocols and practices of the government and the applicant's country of nationality as they relate to the applicant.

46. The February 22nd letter states that a consular officer may determine, in consultation with the Department of State's Visa Office, that an applicant does not pose a threat to national security or public safety. *Id.* If the consular officer then also determines that the other two criteria for a waiver have been met, the consular officer may issue a visa "with the concurrence of a consular manager." *Id.*

47. On April 25, 2018, the Supreme Court held oral arguments in *Trump v. Hawai'i*, Case No. 17-965. During oral argument, the Solicitor General, appearing on behalf of

Defendant State Department, confirmed that "State Department consular officers automatically apply the waiver process in the course of every visa application," and that the waiver provision "does get applied in every single case."[4]

48. On June 26, 2018, the Supreme Court held that the plaintiff's challenging the Proclamation in *Trump v. Hawaii* were unlikely to succeed on the merits of their claims and reversed the grant of the preliminary injunction enjoining the Proclamation. *See Trump v. Hawaii,* Case No. 17-965, --- U.S.---, Slip Op. at 38 (U.S. June 26, 2018). In upholding the Proclamation, the Court observed, "[T]he Proclamation creates a waiver program open to all covered foreign nationals seeking entry as immigrants and nonimmigrants." *Id* at 34.

49. Despite the test of the Proclamation and Defendants' statements that consular officers must consider all visa applicants subject to the Proclamation for waivers, recent statements from consular officers who adjudicate such waivers provide evidence that Defendants delay or avoid fulfilling the officer's non-discretionary duty to make decisions on visa and waiver applications. On information and belief, a consular officer submitted a declaration in pending litigation disclosing that, although consular officials are statutorily vested with discretion to adjudicate visa applications, *see* 8 U.S.C. §§1101 (a)(9), (16), and "regardless of the [Proclamation's] instructions that we had 'discretion to grant the waiver,' we were not allowed to exercise that discretion. We were mandated to send Washington that we found this applicant eligible to apply and Washington would then make the decision to grant or deny the waiver." [5]

50. The Proclamation's restrictions on the issuance of immigrant visas to Iranian nationals, as well as the waiver provision of Section 3 (c) are presently in effect.

51.     The Petitioners and Mr. Emami individually pose no threat to the national security or public safety of the United States. Mr. Emami has never been arrested or committed any crimes. He is a law-abiding person who has been granted permission to travel to other countries around the world such as Turkey. He has submitted extensive information about himself and submitted himself to an interview.

52.     The Petitioners completed their petitions over three years ago. They have since supplemented their petitions by emailing the consulate on multiple occasions demonstrating undue hardship, and have responded to the consulate's requests for information for administrative processing.

53.     To date, the Petitioners have not received any information or communication otherwise from the US Consulate or Defendants with a final decision on their visa petition.

54.     The Defendants have a non-discretionary duty to adjudicate the waiver and I-130 visa applications imposed by 22 C.F.R. §§42.81(a), 42.81€, Section 3(c) of the Proclamation, guidance issued by the State Department, and Defendant's numerous statements in court submissions that Petitioners are entitled to a decision their waiver application.

55.     Petitioner's petition for a writ of mandamus and preliminary injunction directing Defendants to make a final decision on their visa applications; and for a declaration that Defendants have unreasonably delayed the adjudication of the Petitioner's visa application in violation of the APA.

## CLAIMS FOR RELIEF
## COUNT ONE
## MANDAMUS

56. Petitioners repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

57. Petitioner Ali Emami is eligible for and has fulfilled all requirements for his I-130 immigrant-based visas. The Petitioners have submitted all necessary information and evidence supporting Mr. Emami's application for the visas.

58. Defendants have a clear and non-discretionary duty both to adjudicate applications for visas and adjudicate requests for waivers under Section 3(c) of the Proclamation made by individuals subject to the Proclamation.

59. 22 C.F.R. §42.81(a) states, "When a visa application has been properly completed and executed…. The consular officer must either issue or refuse a visa under INA 212(a) or INA 221(g) or other applicable law."

60. 22 C.F.R. §42.81(e) states, "If a visa is refused, and the applicant within one year from the date of refusal adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based, the case shall be reconsidered."

61. Section 3(c) the Proclamation establishes a process by which an individual that is not exempt from the Proclamation can receive a waiver from the Proclamation's restrictions on entry, subsequently receiving a visa to travel to the United States.

62. Further, Defendant's delay in taking action on this specific family's waiver and immigrant visa applications is unreasonable because Mr. Emami's application has been pending for several years.

63. Defendants have a clear, non-discretionary, and mandatory duty to adjudicate Mr. Emami's visa. There is no legal bar to doing so. Accordingly, the Petitioners have a clear and indisputable right to have Mr. Emami's visa adjudicated.

64. No alternative remedy exists to compel action by the Defendants. Petitioners have exhausted all remedies.

## COUNT TWO

## ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. §§ 555 (b), 706 (1)

65. Petitioners repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

66. Pursuant to the APA, 5 U.S.C. §555 (b), Defendants have a nondiscretionary duty to act "within a reasonable time" upon a matter presented to it.

67. Pursuant to the APA, 5 U.S.C. §706 (1), a court may compel agency action unlawfully withheld or unreasonably delayed.

68. Petitioners are eligible for and have fulfilled all requirements for the immigrant-based visas. They have submitted all necessary information and evidence supporting their application.

69. Petitioners have fulfilled all requirements for requesting a waiver pursuant to Section 3(c) of the Proclamation, have submitted sufficient evidence supporting their waiver request and meet the eligibility criteria for issuance of a waiver under Section 3(c).

70.	Defendants have a clear and non-discretionary duty both to adjudicate applications for visas and to adjudicate requests for waivers under Section 3(c) of the Proclamation made by the individuals subject to the Proclamation.

71.	22 C.F.R. §42.81 (a) states, "When a visa application has been properly completed and executed…..the consular officer must either issue or refuse a visa under INA 212(a) or INA 221(g) or other applicable law."

72.	22 C.F.R. §42.81 (e) states, "if a visa is refused, and the applicant within one year from the date of refusal adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based, the case shall be reconsidered."

73.	Section 3(c) of the Proclamation establishes a process by which an individual that is not exempt from the Proclamation can receive a waiver from the Proclamation's restrictions on entry, subsequently receiving a visa to travel to the United States.

74.	Defendants' subsequent guidance and statements in court further establish that Defendants possess a duty to adjudicate waiver requests. While the decision is to grant a waiver is discretionary, Defendants' statements make clear that the duty to make a decision on an application for a waiver is not.

75.	Further, Defendants' delay in taking action on the Petitioner's visa and waiver is unreasonable because the applications have been pending for over four years and soon they will lose the chance to create a family due to the passage of time.

**PRAYERS FOR RELIEF**

WHEREFORE, Petitioners pray that this Court grant the following relief:

1. Issue a writ of mandamus directing the Defendants to adjudicate the Petitioners' application for waivers pursuant to Section 3(c) of the Proclamation, and issue a final determination on Petitioner's application for I-130 relative visa forthwith.

2. Declare that Defendants' delay in adjudicating Petitioners' applications for waivers pursuant to section 3(c) of the Proclamation and the Petitioner's application for I-130 relative visa is unreasonable and violates the APA, and that the Petitioners are entitled to prompt adjudication of their visas;

3. An award of reasonable attorney's fees and costs;

4. Such other relief this Honorable Court deems equitable and just.

Respectfully Submitted,
Attorney for the Petitioners/Plaintiffs,
  /s/Soraya Sadeghi
Soraya Sadeghi, Esq. BBO# 666792
Soraya Law, P.C.
177 Huntington Avenue, 17th Floor
Boston, Massachusetts 02115
Ph: 857-453-6153
Fax: 617-904-1801

Dated: February 10, 2025          soraya@sorayalaw.com