UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| NILOOFAR GHASEMI and ALI EMAMI, | * * * * | |
| Plaintiffs, | * * | |
| v. | * * | Civil Action No. 25-cv-10345-ADB |
| MARCO RUBIO, *Secretary, U.S. Department of State, in his official capacity*, and PAMELA BONDI, *Attorney General of the United States, in her official capacity*, | * * * * | |
| Defendants. | * * * | |

**<u>MEMORANDUM AND ORDER</u>**

BURROUGHS, D.J.

Niloofar Ghasemi ("Ghasemi" or "Plaintiff Ghasemi") and Ali Emami ("Emami" or "Plaintiff Emami") (collectively, "Plaintiffs") bring suit against Marco Rubio, in his official capacity as Secretary of the U.S. Department of State, and Pamela Bondi, in her official capacity as Attorney General of the United States (collectively, "Defendants"), for failure to adjudicate Plaintiff Emami's application within a reasonable time. The Complaint asserts three causes of action pursuant to the Mandamus and Venue Act ("MVA"), 28 U.S.C. § 1361 (Count I), and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555(b) (Count II) and 706(1) (Count III). [ECF No. 17 ("Amended Complaint" or "Am. Compl.") ¶¶ 56–75]. For the following reasons, Defendants' motion to dismiss, [ECF No. 18], is **<u>GRANTED</u>** without prejudice.

## I.    BACKGROUND

Following a brief review of the applicable statutory scheme, the Court provides a

summary of the relevant facts, taken primarily from the Amended Complaint.

### A.    Statutory Scheme

Under the Immigration and Nationality Act ("INA"), a U.S. citizen may seek lawful

permanent resident status for an immediate relative, including a spouse.  8 U.S.C.

§§ 1154(a)(1)(A)(i), 1151(b)(2)(A)(i); see also id. §§ 1181(a), 1182(a)(7)(A) (a noncitizen must

have a visa to be admitted to the United States as an immigrant).  Specifically, the U.S. citizen

must file a Form I-130, Petition for Alien Relative ("petition") with U.S. Citizenship and

Immigration Services ("USCIS"), confirming that the noncitizen beneficiary qualifies as an

eligible family member.  Id. §§ 1154(a)(1)(A)(i), 1151(b)(2)(A)(i) (defining spouse as an

immediate relative for purposes of the petition); 8 C.F.R. § 204.1(a).  If eligibility is established,

USCIS approves the petition and, for noncitizen beneficiaries outside of the United States,

forwards the case to the State Department's National Visa Center ("NVC").  8 U.S.C. § 1202; 8

C.F.R. § 204.2(a)(3).

At this stage, the beneficiary submits the Form DS-260 "Online Application for

Immigrant Visa and Alien Registration" ("DS-260") to the NVC, which begins the visa

application process.  See 9 U.S. Dep't of State, Foreign Affairs Manual ("FAM") § 504.1-

2(a)(1), (b)(2); 22 C.F.R. § 42.63(a)(1) ("Every alien applying for an immigrant visa must make

application, as directed by the consular officer, on Form DS-230, Application for Immigrant Visa

and Alien Registration, or on Form DS-260, Electronic Application for Immigrant Visa and

Alien Registration.").  The NVC then gathers additional materials from the noncitizen

beneficiary and collects a fee.  9 FAM § 504.1-2(b)(2).  Once the NVC processing is completed,

the State Department schedules an immigration visa interview with a consular officer at an embassy with jurisdiction over the beneficiary's residence.  8 U.S.C. § 1202(a); 22 C.F.R. §§ 42.61(a), 42.62; Arab v. Blinken, 600 F. Supp. 3d 59, 63 (D.D.C. 2022).

A consular officer, taking into consideration the visa application and the applicant's representations during the interview, determines whether to "issue the visa" or "refuse the visa." 22 C.F.R. § 42.81(a) ("When a visa application has been properly completed and executed before a consular officer . . . the consular officer must issue the visa, [or] refuse the visa under INA 212(a) or 221(g) or other applicable law . . . .")[1]; id. § 40.6 ("A visa can be refused only upon a ground specifically set out in the law or implementing regulations."); 9 FAM § 301.4-1(b)(1)– (15) (providing summary of grounds for refusal, including describing Section 221(g) refusal as "[a]pplication does not comply with INA").  A consular officer, however, "cannot temporarily refuse, suspend . . . or hold the visa for future action."  9 FAM § 504.9-2.  "The authority to grant a visa rests exclusively with the consular officer."  Ghannad-Rezaie v. Laitinen, 757 F. Supp. 3d 148, 151 (D. Mass. 2024) (first citing 8 U.S.C. § 1201(a)(1)(A); and then citing 22 C.F.R. § 42.71(a)).

Section 221(g) of the INA, the applicable ground for refusal in this case, provides that no visa shall be issued if:

> (1) it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law, (2) the application fails to comply with the provisions of this chapter, or the regulations issued thereunder, or (3) the consular officer knows or

---

[1] A consular officer may also "discontinue granting the visa" pursuant "to an outstanding order under INA 243(d)," which allows the United States to sanction countries for failing to accept the return of their citizens and nationals removed from the United States.  That provision, however, is not relevant for present purposes.  22 C.F.R. § 42.81(a); 8 U.S.C. § 1253(d).

has reason to believe that such alien is ineligible to receive a visa or
such other documentation under section 1182 of this title, or any
other provision of law.

8 U.S.C. § 1201(g); see also id. § 1182(a)(1)–(10) (defining "[c]lasses of aliens ineligible for

visas or admissions" on, among others, health-related grounds, criminal and related grounds, and

security and related grounds); 9 FAM § 302.1-8(B)(a) (listing additional grounds for refusing a

visa under Section 221(g), including where an applicant "fails to furnish information as required

by law or regulations" or an application "is not supported by the documents required by law or

regulations").  In situations where the information before the consular officer based on the DS-

260 is "inadequate to determine the alien's eligibility to receive an immigrant visa," the officer

may request additional information from the applicant.  22 C.F.R. § 42.63(c).  The consular

officer requests such information through a Form DS-5535, Supplemental Questions for Visa

Applicants, which covers topics such as an applicant's travel and employment history.  See Al

Shaleli v. Blinken, No. 22-cv-01244, 2022 WL 4664245, at *3 & n.1 (E.D. Cal. Sept. 30, 2022);

Taherian v. Blinken, No. 23-cv-01927, 2024 WL 1652625, at *1 (C.D. Cal. Jan. 16, 2024).

　　　If the consular officer refuses the visa "because the officer determines the alien to be

inadmissible," the officer must "provide the alien with a timely written notice that . . . (A) states

the determination, and (B) lists the specific provision or provisions of law under which the alien

is inadmissible."  8 U.S.C. § 1182(b)(1).[2]  "The consular officer 'may then conclude that the

applicant could perhaps still receive a visa eventually if circumstances change' and may 'place

an officially refused application in administrative processing.'"  Ghannad-Rezaie, 757 F. Supp.

---

[2] No explanation is required when the officer determines that the noncitizen is ineligible on
criminal or national security grounds.  8 U.S.C. § 1182(b)(3).

3d at 151 (quoting <u>Karimova v. Abate</u>, No. 23-cv-05178, 2024 WL 3517852, at *2 (D.C. Cir. July 24, 2024) (per curiam)).

"A refusal under INA § 221(g) may be 'overcome . . . when additional evidence is presented, or administrative processing is completed.'" <u>Ghannad-Rezaie</u>, 757 F. Supp. 3d at 151 (alteration in original) (quoting 9 FAM § 306.2-2(A)(a)). As relevant to the instant case, if "the applicant within one year from the date of refusal adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based, the case <u>shall</u> be reconsidered." 22 C.F.R. § 42.81(e) (emphasis added). Under such circumstances, a consular officer "re-open[s] and re-adjudicate[s] the case" and "determin[es] whether the applicant is eligible for a visa" if either additional evidence is presented or the consular officer determines that administrative processing is complete. <u>Ghannad-Rezaie</u>, 757 F. Supp. 3d at 151 (alteration in original) (quoting 9 FAM § 306.2-2(A)(a)(1)). According to the FAM, "[a] refusal under INA 221(g) is, legally, a refusal on a visa application, even if that refusal is eventually overcome." 9 FAM § 302.1-8(B)(c).

### B.    Factual Background

Plaintiff Ghasemi, a U.S. citizen who resides in Weymouth, Massachusetts, filed an I-130 visa petition on behalf of her husband, Plaintiff Emami, an Iranian national, sometime between June 29, 2021, and July 2022. [Am. Compl. ¶¶ 1–2, 5]. After USCIS approved the I-130 petition on November 15, 2022, [<u>id.</u> ¶ 8], Plaintiff Emami submitted the DS-260 Immigrant Visa and Alien Registration application to the NVC. <u>See</u> [<u>id.</u> ¶¶ 8–9]. On December 7, 2023, Plaintiff Emami had a consular interview at the U.S. Embassy in Yerevan, Armenia. [<u>Id.</u> ¶¶ 1, 10]. During the interview, Plaintiff Emami was told that he would receive a questionnaire and could expect to hear back regarding the decision within one month. [<u>Id.</u> ¶ 10]. Between

December 20, 2023, and October 2, 2024, Plaintiffs Ghasemi and Emami inquired about the status of Plaintiff Emami's visa application "on at least 10 occasions" and never received a response or a questionnaire.  [Id. ¶ 11].  Plaintiffs also checked the Consular Electronic Application Center ("CEAC") on a regular basis, which noted that Plaintiff Emami's application remained under review.  [Id. ¶ 11].  After the Plaintiffs filed this action, however, Plaintiff Emami's application status changed:  CEAC indicated that Plaintiff Emami's visa application was refused under INA section 221(g).  [Id. ¶¶ 11–12].  On July 21, 2025, during a conference with the Assistant United States Attorney's office, Plaintiffs learned "that the visa application at issue was refused under INA section 221(g), 8 U.S.C. 1201(g), on 12/7/2023 at the U.S. Embassy in Yerevan."  [Id. ¶ 12].

### C.    Procedural History

Plaintiff filed the instant action on February 10, 2025, [ECF No. 1], and subsequently, on August 1, 2025, filed the operative Amended Complaint, [Am. Compl.].  Defendants moved to dismiss Plaintiffs' Amended Complaint on August 15, 2025, [ECF Nos. 18, 19], and Plaintiffs opposed on September 5, 2025, [ECF No. 22 ("Opp'n")].

## II.    STANDARD OF REVIEW

### A.    Rule 12(b)(1)

In general, when evaluating a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Court must determine whether the facts as alleged in the complaint, "taken at face value," support subject-matter jurisdiction.  Gordo-González v. United States, 873 F.3d 32, 35 (1st Cir. 2017).  When undertaking this evaluation, courts "apply the same plausibility standard used to evaluate a motion under Rule 12(b)(6)."  Gustavsen v. Alcon Lab'ys, 903 F.3d 1, 7 (1st Cir. 2018).  The Court must therefore "accept the factual averments of

6

the complaint as true, and construe those facts in the light most congenial to [Plaintiffs'] cause."

<u>Royal v. Leading Edge Prods. Inc.</u>, 833 F.2d 1, 1 (1st Cir. 1987).

### B.    Rule 12(b)(6)

When deciding a motion to dismiss under Rule 12(b)(6), the Court must accept as true all
well-pleaded facts, analyze those facts in the light most favorable to the plaintiff, and draw all
reasonable factual inferences in favor of the plaintiff.  <u>See</u> <u>Gilbert v. City of Chicopee</u>, 915 F.3d
74, 80 (1st Cir. 2019) (citing <u>Ocasio-Hernández v. Fortuno-Burset</u>, 640 F.3d 1, 7 (1st Cir. 2011);
<u>Gargano v. Liberty Int'l Underwriters, Inc.</u>, 572 F.3d 45, 48 (1st Cir. 2009)).  "[A] complaint
must provide 'a short and plain statement of the claim showing that the pleader is entitled to
relief,'" <u>Cardigan Mountain Sch. v. N.H. Ins. Co.</u>, 787 F.3d 82, 84 (1st Cir. 2015) (quoting Fed.
R. Civ. P. 8(a)(2)), and set forth "factual allegations, either direct or inferential, respecting each
material element necessary to sustain recovery under some actionable legal theory," <u>Pitta v.
Medeiros</u>, 90 F.4th 11, 17 (1st Cir. 2024) (quoting <u>Gagliardi v. Sullivan</u>, 513 F.3d 301, 305 (1st
Cir. 2008)).  Although detailed factual allegations are not required, a complaint must set forth
"more than labels and conclusions," <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007), and
"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory
statements, do not suffice," <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  Rather, "a complaint
must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible
on its face.'"  <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 570).

## III.    DISCUSSION

Defendants have moved to dismiss the Complaint, asserting that (i) they have not
unlawfully withheld or unreasonably delayed the adjudication of Plaintiff Emami's visa
application because they have no mandatory, non-discretionary duty to act on a refused visa

application; (ii) the doctrine of consular nonreviewability bars judicial review; and (iii) the alleged delay is not unreasonable.  [ECF No. 19 at 1–2, 6–20].

As a threshold matter, the Court observes that Amended Complaint does not clearly state whether Plaintiff Emami's visa application was placed in administrative processing when it was refused.  See generally [Am. Compl.]; [Opp'n].  If Plaintiff Emami's visa application was refused outright, rather than refused and placed in administrative processing, then Defendants are correct that this case has become moot.  Accordingly, to construe the facts as pleaded in the light most favorable to Plaintiffs, the Court assumes that Plaintiff Emami's visa application was refused and is undergoing administrative processing.

## A.    The APA and MVA

### 1. Jurisdiction

The APA states that "each agency shall proceed to conclude a matter presented to it" "within a reasonable time," 5 U.S.C. § 555(b), and that courts "shall . . . compel agency action unlawfully withheld or unreasonably delayed," id. § 706(1).[3]  "While the APA does not provide an independent source of subject matter jurisdiction," Conservation L. Found. v. Busey, 79 F.3d 1250, 1261 (1st Cir. 1996), the MVA vests district courts with "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency

---

[3] To the extent Plaintiffs allege that Defendants "unlawfully withheld" a decision under § 706(1), [Opp'n at 5]; the Court notes that Plaintiff's "'unlawfully withheld' claim sounds in 'unreasonable delay' and the [P]laintiffs fail, in any respect, to distinguish between visa adjudications being 'unlawfully withheld' as opposed to 'unreasonably delayed' under § 706(1)." Lee v. Blinken, No. 23-cv-01783, 2024 WL 639635, at *7 (D.D.C. Feb. 15, 2024) (citation modified); see generally [Opp'n].  "The Court's 'unreasonable delay' analysis 'therefore addresses the entirety of [P]laintiff's § 706(1) claim[ ] to compel agency action.'" Rezai, 2024 WL 4830988, at *5 (alterations in original) (quoting Tate v. Pompeo, 513 F. Supp. 3d 132, 147 n.6 (D.D.C. 2021)).

thereof to perform a duty owed to the plaintiff," 28 U.S.C. § 1361.  "Despite their different requirements, the APA and MVA are generally treated as coextensive for purposes of unreasonable-delay claims."  Durrani v. Bitter, No. 24-cv-11313, 2024 WL 4228927, at *2 (D. Mass. Sep. 18, 2024).  A claim under § 706(1), as brought forth here, "can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." Norton v. S. Utah Wilderness All., 542 U.S. 55, 64 (2004) (emphasis omitted).

Construing Plaintiffs' Amended Complaint liberally, the Court understands it to allege that Defendants have failed to take a nondiscretionary act within a reasonable period of time after Plaintiff Emami's visa application was refused and placed in administrative processing. [Am. Compl. ¶¶ 34, 41, 59–60, 71–72]; see also [Opp'n at 4–5 (arguing that Plaintiffs have "submitted supplemental documentary and legal materials")].

As a general matter, the INA provides that "[a]ll immigrant visa applications shall be reviewed and adjudicated by a consular officer."  8 U.S.C. § 1202(b).  Courts are split as to whether § 1202(b) creates a "nondiscretionary duty" establishing jurisdiction under the APA and MVA.  See Conley v. U.S. Dep't of State, 731 F. Supp. 3d 104, 109 (D. Mass. 2024); id. at 110 (collecting cases).  That said, district courts within the First Circuit have "typically found a 'nondiscretionary duty on consular officials to act upon a visa or naturalization petition without unreasonable delay.'"  Durrani, No. 24-cv-11313, at *2 (quoting Conley, 731 F. Supp. 3d at 109).

The question here is whether Defendants have a nondiscretionary duty to act within a reasonable period time after refusing a visa application and placing it in administrative processing.  At least one other session of this Court has found that 22 C.F.R. § 42.81(e), which provides that whenever "a visa is refused, and the applicant within one year from the date of

refusal adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based, the case shall be reconsidered," creates such a duty.  Ghannad-Rezaie, 757 F. Supp. 3d at 153 (quoting 22 C.F.R. § 42.81(e)).  Specifically, that court reasoned that because "shall" implies a requirement, the regulation creates a mandatory duty to reconsider the refusal if new evidence is presented during administrative processing, and, as such, creates a duty to act. Id.  Finding no reason to depart from this reasoning, the Court, for the limited purposes of this order, concludes that it has jurisdiction over Plaintiffs' claims that Defendants have a nondiscretionary duty to reconsider Plaintiff Emami's visa application once he presents new evidence to overcome the basis for refusal.

Plaintiffs further reference a June 4, 2025, Presidential Proclamation ("Proclamation") that restricts entry to the United States for certain nationals, including Iranians, seemingly suggesting that Section 5 of the Proclamation, entitled "Adjustments to and Removal of Suspensions and Limitations," "establishes the waiver process by which nationals of Iran can obtain a visa to enter the United States."  Proclamation No. 10949, 90 Fed. Reg. 24497 (June 4, 2025); [Am. Compl. ¶ 37]; see also [id. ¶¶ 13–16, 29, 36–40].  In their view, that waiver, together with an unidentified agency guidance, "make clear that Defendants have a mandatory duty to act on applications for waivers."  [Am. Compl. ¶ 36].  Not only is this argument not easily comprehensible, but Plaintiffs offer no support for their argument beyond conclusory statements.  See [Am. Compl. ¶¶ 37–40].  The Court will not consider it for purposes of this Order.

### 2.Consular Nonreviewability

Under the doctrine of consular nonreviewability, a court is barred from reviewing a consular officer's final decision denying a visa application.  Dep't of State v. Muñoz, 602 U.S.

899, 907–08 (2024).  Defendants argue that refusing Plaintiff Emami's visa application is a final

decision and, as such, Plaintiffs' claim under APA § 706 fails.  [ECF No. 19 at 13–15].

Plaintiffs seemingly contend that Defendants have not yet issued a final decision, stating that

Plaintiff Emami's application "ha[s] been pending for over four years."  [Am. Compl. ¶ 75]; see

also [id. ¶¶ 71–72].  Because Plaintiffs dispute that they have received a final decision, the

question is whether the consular nonreviewability doctrine bars unreasonable delay claims.

Courts in this Circuit differ in their approaches on this particular issue.  Compare

Ghannad-Rezaie, 757 F. Supp. 3d at 152–53 (because a claim of unreasonable delay does not

seek judicial review of a consular decision to deny a visa, consular nonreviewability "does not

preclude claims to compel [defendants] to adjudicate a visa application when [they] ha[ve] a

nondiscretionary duty to do so"), and Dy v. Blinken, 703 F. Supp. 3d 314, 317 (D. Mass. 2023)

(consular nonreviewability does not preclude claims seeking to compel final adjudication of a

visa application), with Samandar v. Blinken, 599 F. Supp. 3d 28, 29 (D. Mass. 2022) ("[T]he

doctrine of consular nonreviewability precludes review under the APA.").  Here, absent guidance

from the First Circuit, the Court will assume that the consular nonreviewability doctrine does not

preclude judicial review of Plaintiffs' claim to compel agency action under the APA.  See

Conley, 731 F. Supp. 3d at 110.

### 3. Unreasonable Delay

"To state a claim for unreasonable delay under the APA, a plaintiff must allege that (1) a

government agency failed to take legally required action and (2) the agency's delay in taking this

action was unreasonable."  Conley, 731 F. Supp. 3d at 110 (first citing S. Utah Wilderness All.,

542 U.S. at 62–63; and then citing Da Costa v. Immigr. Inv. Program Off., 80 F.4th 330, 340

(D.C. Cir. 2023)).

With regard to the first factor, as noted above, Defendants argue that by refusing to grant Plaintiff Emami's application and placing it in administrative processing, they have adjudicated his application and, as such, have taken the required agency action.  [ECF No. 19 at 6–13]. Plaintiffs respond that there has been no final decision because Emami's application is still pending in administrative processing.  [Am. Compl. ¶¶ 34, 71–75]; [Opp'n at 6].

Both positions are supported by case law.  Compare Conley, 731 F. Supp. 3d at 111 (refusal, even if the "agency identified a specific contingency that might warrant reconsideration," is a final decision), with Carter v. U.S. Dep't of Homeland Sec., No. 21-cv-00422, 2021 WL 6062655, at *3 n.3 (D.D.C. Dec. 22, 2021) (refusal followed by administrative processing is not a final decision), Ramirez v. Blinken, 594 F. Supp. 3d 76, 87 (D.D.C. 2022) (refusal of visa application after consular interview is not final as it may be entered into "administrative processing"), and Ibrahim v. U.S. Dep't of State, No. 19-cv-00610, 2020 WL 1703892, at *5 (D.D.C. Apr. 8, 2020) (consular decision not final if visa application is undergoing administrative processing) (collecting cases).  As discussed supra, the Court is inclined to agree that 22 C.F.R. § 42.81(e) creates a mandatory duty to reconsider a refusal if new evidence is presented during administrative processing.  Here, Plaintiffs assert that Emami submitted additional documentary emails, though it is unclear when precisely he submitted such documents.  [Am. Compl. ¶ 68]; [Opp'n at 4–6].  Drawing all reasonable inferences in favor of Plaintiffs, the Court assumes that Plaintiff Emami provided sufficient additional information to the Consulate to create a duty for Defendants to reconsider their refusal of his application.  [Am. Compl. ¶ 68].  Accordingly, for the narrow purposes of this order, the Court assumes that Defendants have yet to discharge their duty to act.

12

The second factor requires that the agency's delay be unreasonable. To evaluate whether agency action is unreasonably delayed, courts in the First Circuit consider the six factors laid out in Telecomms. Rsch. & Action Ctr. v. F.C.C., 750 F.2d 70, 80 (D.C. Cir. 1984) ("TRAC"). The TRAC factors are as follows:

> (1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

Id. (citation modified).

As a threshold matter, the Court observes that whether the TRAC factors are appropriately assessed at the pleading stage is an unresolved question in the First Circuit. Rezaii v. Kennedy, No. 24-cv-10838, 2025 WL 750215, at *4–5 (D. Mass. Feb. 24, 2025) (collecting cases). That said, "most sessions [of this Court] . . . evaluate the TRAC factors at the motion to dismiss stage." Id. at *4; see also Durrani, 2024 WL 4228927, at *3 (acknowledging that the TRAC factors are fact-intensive, but determining that the court must "evaluate the facts pleaded in the complaint and determine whether they plausibly state a claim for relief under the applicable law"); Da Costa v. Immigr. Inv. Program Off., 643 F. Supp. 3d 1, 12 (D.D.C. 2022), aff'd, 80 F.4th 330 (D.C. Cir. 2023) ("There is no categorical prohibition on deciding unreasonable-delay claims at the motion-to-dismiss stage, so the question of whether discovery is necessary depends, as with any sort of claim, on the particular Complaint.").

The first two <u>TRAC</u> factors are usually considered together.  <u>Dastagir v. Blinken</u>, 557 F. Supp. 3d 160, 165 (D.D.C. 2021).  The first factor asks "whether the agency's response time . . . is governed by an identifiable rationale," <u>Ctr. for Sci. in the Pub. Int. v. U.S. Food & Drug Admin.</u>, 74 F. Supp. 3d 295, 300 (D.D.C. 2014), and the second looks at whether "Congress has provided a timetable" that "may supply content for th[e] rule of reason," <u>TRAC</u>, 750 F.2d at 80.  The Plaintiffs offer no case law or statutory language supporting their contention that the approximately twenty-three-month delay at issue here—that is, the period of time that Emami's visa application has seemingly been in administrative processing since his interview— "exceeds any bounds of reasonableness."[4]  [Opp'n at 7].  Accordingly, the first two <u>TRAC</u> factors do not weigh in Plaintiffs' favor.

The third and fifth factors are also ordinarily assessed together and relate to the "interests prejudiced by the delay," including the "impact on human health and welfare and economic harm."  <u>Liberty Fund, Inc. v. Chao</u>, 394 F. Supp. 2d 105, 118 (D.D.C. 2005).  Plaintiffs claim that the delay in processing has resulted in "significant" hardship, including "emotional strain and financial burden," given the continued separation of Plaintiff Emami from his wife, Plaintiff Ghasemi, with whom he wants to start a family [Opp'n at 8]; [Am. Compl. ¶ 17–19].  Although the Court sympathizes with Plaintiffs' challenging circumstances, "the hardships that [Plaintiffs] allege[] do not materially distinguish [their] circumstances from those of the countless other[s]." <u>Ghannad-Rezaie</u>, 757 F. Supp. 3d 148 at 155–56; <u>see also</u> <u>Memon v. Blinken</u>, No. 22-cv-00754, 2023 WL 1438396, at *3 (D.D.C. Feb. 1, 2023) ("In general, concerns about separation from

---

[4] Regardless, assuming that December 2023 was the last time Defendants reviewed Plaintiff Emami's application, "a delay of this length does not typically require judicial intervention." <u>Skalka v. Kelly</u>, 246 F. Supp. 3d 147, 154 (D.D.C. 2017).

family. . . are insufficient to weigh in favor of the plaintiff."). These factors, therefore, do not support a finding of unreasonable delay.

The fourth <u>TRAC</u> factor requires an assessment of "the effect of expediting delayed action on agency activities of a higher or competing priority." 750 F.2d at 80. Courts have generally "declined to move plaintiffs to 'the head of the queue' because doing so would 'simply move[] all others back one space and produce[] no net gain.'" <u>Durrani</u>, 2024 WL 4228927, at *5 (quoting <u>Mashpee Wampanoag Tribal Council, Inc. v. Norton</u>, 336 F.3d 1094, 1100 (D.C. Cir. 2003)). Moving Emami to the "'front of the line' would come at the expense of others who shoulder equally taxing burdens." <u>Akter v. Rubio</u>, No. 24-cv-03256, 2025 WL 1950884, at *6 (D.D.C. July 16, 2025) (quoting <u>Dastagir</u>, 557 F. Supp. 3d at 168). This factor, accordingly, weighs against a finding of unreasonable delay.

Finally, because Plaintiffs allege no facts suggesting bad faith or impropriety on the part of the Defendants, the sixth <u>TRAC</u> factor weighs neutrally in the Court's analysis. <u>Palakuru v. Renaud</u>, 521 F. Supp. 3d 46, 53 (D.D.C. 2021). In sum, the <u>TRAC</u> factors do not support a finding of unreasonable delay. The Court concludes that Plaintiffs have failed to state a claim under the APA, and, accordingly, the MVA. <u>Durrani</u>, 2024 WL 4228927, at *2–3; <u>Aghamohammadi v. Rubio</u>, No. 24-cv-02801, 2025 WL 2687343, at *15 (D. Md. Sep. 19, 2025) ("Because the standard by which a court reviews . . . agency inaction is the same under both § 706(1) of the APA and the Mandamus Act, Plaintiffs have failed to state a claim for mandamus." (citation modified)).

## IV.    CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss, [ECF No. 18], is **<u>GRANTED</u>** without prejudice.

**SO ORDERED.**

November 4, 2025

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE